UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-22887-GAYLES

**JORGE MATTOS and**
**PATRICIA TOJA**,

      Plaintiffs,

v.

**NATIONAL WESTERN LIFE**
**INSURANCE COMPANY and**
**UNIVERSAL INSURANCE**
**BROKER, CORP.**,

      Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant National Western Life Insurance Company's ("NWL") Motion to Compel Arbitration and Stay the Proceedings ("NWL's Motion"), [ECF No. 6], and Defendant Universal Insurance Broker, Corp.'s ("UIB") Motion to Stay this Action Pending Arbitration ("UIB's Motion"), [ECF No. 7], (collectively, the "Motions"). The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons discussed below, the Motions are granted.

**I.     BACKGROUND**

In this action, Plaintiffs Jorge Mattos and Patricia Toja seek, among other things, to enforce a life insurance policy (the "Policy") against Defendants. NWL issued the Policy in 2004 to the now-deceased Colombian citizen Helena Mondragon (a.k.a Helena Mondragon de Toja) (Plaintiff Toja's mother and Plaintiff Mattos' mother-in-law). The Policy names both Plaintiffs as primary

beneficiaries. The issue presently before the Court is whether Plaintiffs may be compelled to arbitrate this dispute.

On May 4, 2020, Plaintiffs brought the following claims against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida: (1) breach of contract against NWL (Count I); (2) negligence against NWL (Count II) and UIB (Count III); (3) breach of fiduciary duty against UIB (Count IV); (4) negligent supervision against Defendants (Count V); and (5) conversion against NWL (Count VI). [ECF No. 1-1 at 6–15]. Plaintiffs attached to the Complaint a copy of the Policy and the application for the Policy (the "Application"), along with a translation of each form from Spanish to English and an affidavit of translation. [ECF No. 1-1 at Exhibit 1].

Except for some words that do not affect the Court's analysis in this Order, Defendants do not dispute the translation that Plaintiffs provide to the Court. The following provisions are recited exactly as they appear in the translated documents. In relevant part, the Application provides:

> Each one of the hereinafter of the Signing Parties has read, understand and agrees with international business arbitration provision printed in this application. Also understands that the arbitration provision is applicable to any and every conflict arising out of this application, conditional insurance agreement and any insurance contract that may result.

[ECF No. 1-1 at 54]. Under a section titled "International Business Arbitration," which sits directly below the provision just outlined, the Application further states:

> 1.  In case of any and all conflicts, differences, disputes and claims regarding to or the outcome in connection with this contract, including any matter in reference to its creation, existence, validity, compliance, performance, alteration or termination will be finally determined by arbitration under the Public Resources Institute Center for Dispute Resolution Rules for Unmanaged Arbitration of International Disputes by an arbitration court composed of three arbitrators, each of whom will be a member or Associate of the UK Institute of Referees' Statutes.
>
> [Provisions 2–5 omitted]
>
> 6.  The parties hereby waive and exclude any right of judicial process or appeal.

7. This contract is specifically stipulated and by mutual consent to be an international trade agreement to be construed pursuant to the contract laws of the State of Colorado, USA, excluding its principles of choice of law and provides that any dispute in connection with the arbitration agreement will be governed by the international provisions of the U.S. Arbitration Decree, 9 U.S.C. Sec. 201 et Seq. Arbitrators may grant any appropriate redemption under applicable law, including without limitation declaratory redemption and/or specific enforcement.

8. The parties subject to arbitration have addressed and identify the insurer, insured, Holder, Beneficiary and all persons for whom they are claiming, though, or on behalf of, the insurer, Insured, Holder, Beneficiary, or treatment, Constitutions, statutes, codes, ordinance, proclamations, rules, regulations and/or decrees of the respective countries of the parties. In addition, the parties specifically come to an agreement and require that all jurisdiction, arbitration, unconsciousness, relative or absolute annulment, termination, reformation matters or any connection existing in the law or in equity on the renewal of any contract shall be determined exclusively by the arbitration court.

*Id.*

In addition, the Policy states the following on page 1 in capital letters and in bold underline:

**THIS POLICY IS SUBJECT TO BINDING ARBITRATION.**

*Id.* at 66. Like the Application, the Policy contains a provision titled "International Business Arbitration," which outlines the following language similar to that in the Application:

1. In case of disputes, differences, controversies, and claims related to or resulting in connection with this contract, including any matter in reference to its formation, existence, validity, compliance, performance, alteration, or termination, they shall all be resolved by arbitration under the Public Resources Institute Center for Dispute Resolution Rules for Unmanaged Arbitration of International Disputes through an arbitration court formed of three arbitrators, each of whom shall be a qualified arbitrator.

   [Provisions 2–5 omitted]

6. The parties hereby waive and exclude any right of judiciary process or appeal.

7. This contract is specifically drafted and by common agreement to be an international business agreement to be interpreted in accordance with all

> contract law of the State of Colorado, United States of America, but excluding its principles of choice of law, and provides that any dispute relating to the agreement of arbitration shall be governed by the international provisions of the United States Arbitration decree, 9 U.S.C. Sec. 201 et seq. Arbitrators may grant any appropriate redemption under relevant laws, including, without limitation, declarative redemption and/or specific execution.
>
> 8. The parties subject to arbitration have agreed and defined that they are the insurer, the Insured Party, the Policyholder, the Beneficiary, and all further individuals for which the claim is being performed, through, or on behalf of, the Insured Party, the Policyholder, the Beneficiary, or any other beneficiary being referenced. This agreement shall rule all claims that are submitter under or in relation to this contract, its Constitutions, statutes, codes, proclamations, ordinances, rules, regulations, and/or decrees of the corresponding countries of the parties. Additionally, the parties specifically reach an agreement and require that all matters regarding jurisdiction, arbitration, obliviousness, relative or absolute annulment, termination, reformation, or any link existing in the law or in equity over the revocation of any contract shall be exclusively assessed by the arbitration court.
>
> 9. In the event that this arbitration provision is canceled or invalidated or that, for any reason, becomes ineffective, the courts of Austin, Texas, United States shall have exclusive jurisdiction over the dispute. This policy must be interpreted in accordance to the contract laws of the State of Colorado, United States, excluding its principles of choice of law.

*Id.* at 79–80.

On July 13, 2020, Defendants removed this action asserting that this Court has federal question jurisdiction because the above arbitration provisions in the Application and the Policy (collectively, the "Arbitration Provisions") fall under the Inter-American Convention on International Commercial Arbitration (the "Convention"), 9 U.S.C. § 205 (allowing actions to be removed when the subject matter "relates to an arbitration agreement or award falling under the Convention . . . ."). [ECF No. 1 at 5]. On July 20, 2020, NWL moved to compel arbitration and to stay the proceedings pending arbitration. [ECF No. 6]. The next day, UIB also moved to stay the proceedings pending arbitration but did not move to compel arbitration. [ECF No. 7].

NWL argues that all of Plaintiffs' claims are subject to arbitration under the valid and enforceable Arbitration Provisions. And, to the extent that the scope or validity of the Arbitration Provisions are in question, Defendants assert that such questions are committed solely to the jurisdiction of the arbitrator to be decided in the first instance. Plaintiffs argue that the Court cannot compel them to arbitrate this matter for several reasons outlined below. The Court does not reach those issues for the reasons discussed below and ultimately agrees with NWL that it must compel arbitration in this case.

## II. LEGAL STANDARDS

"The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements." *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *3 (M.D. Fla. Apr. 21, 2009). "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and internal quotation marks omitted). The Supreme Court requires federal courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987) (citation omitted).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration*." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) (citation omitted) (emphasis in original), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent.*

*Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177 (2014).

When reviewing a motion to compel arbitration, courts must consider whether "(1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Curbelo v. Autonation Ben. Co., Inc.*, 14-CIV-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015) (citations omitted). "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law contract principles' and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).

In determining the validity of an agreement to arbitrate, the Supreme Court has noted that courts should generally decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). However, parties "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" by including in their agreement what the Supreme Court has labeled a "delegation provision." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted). A delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Among other things, delegation provisions may delegate to an arbitrator gateway questions

6

regarding "the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017).

"Under the FAA, a delegation provision is valid, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (citing 9 U.S.C. § 2). "Courts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question." *Id.* (citing *Rent–A–Ctr.*, 561 U.S. at 69 n.1). "In order to determine whether the parties have manifested a clear and unmistakable intent to arbitrate gateway issues," courts must "look to the wording of the delegation provision itself." *Jones*, 866 F.3d at 1267 (finding that the parties demonstrated a clear and unmistakable intent to arbitrate "any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including but not limited to any claim that all or any part of th[e] Agreement is void or voidable").

Importantly, courts "may examine a challenge to a delegation provision *only* if the claimant challenged the delegation provision directly. That is, [the party opposing arbitration] must have alleged that the delegation provision specifically—and not just the agreement as a whole—can be defeated by fraud, duress, unconscionability, or another generally applicable contract defense." *Id.* at 1264 (citations and internal quotation marks omitted) (emphasis added). "In sum, absent a challenge to the delegation provision itself, the federal courts must treat the delegation provision 'as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146–47 (11th Cir. 2015) (citing *Rent-A-Ctr.*, 561 U.S. at 72).

**III.   DISCUSSION**

Here, Plaintiffs argue that the Court should not compel the parties to arbitrate because: (1) the Policy violated Florida and Colombian law, and, therefore, NWL's "unclean hands" should prevent arbitration based upon equitable estoppel; (2) the Policy's arbitration provision is procedurally and substantively unconscionable; (3) Florida law and public policy are "against" arbitration for life insurance contracts; (4) the Arbitration Provisions contain various ambiguities, which should be interpreted against the insurer; (5) the Arbitration Provisions do not bind Plaintiffs because they were not signatories to the Application or the Policy; (6) Florida's choice of law applies to this case; (7) the Application's forum selection clause is unreasonable and unjust; and (8) Plaintiffs' tort claims do not fall within the Arbitration Provisions. *See generally* [ECF No. 8].[1] However, the Court cannot resolve these issues because the Application and the Policy specifically delegate these questions to the arbitrator under their respective delegation provisions.

The Application's delegation provision provides that "all jurisdiction, arbitration, unconsciousness, relative or absolute annulment, termination, reformation matters or any connection existing in the law or in equity on the renewal of any contract *shall be determined exclusively by the arbitration court*." [ECF No. 1-1 at 54] (emphasis added). Additionally, the Policy's delegation provision states that "all matters regarding jurisdiction, arbitration,

---

[1] The Court finds unpersuasive Plaintiffs' one-paragraph argument that one of the four *Bautista* jurisdictional prerequisites are not met in this case. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005) (noting that a district court must order arbitration unless one of the Convention's affirmative defenses apply or one of the following four jurisdictional prerequisites are not met: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states") (citing *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003)). Plaintiffs claim that the fourth factor is not met in this action because the Policy violated Colombian law. Even assuming this is true, which the Court does not decide, Plaintiffs provide no authority for the assertion that this means the Policy has no reasonable relation with a foreign state. Regardless, the first clause of the fourth factor is satisfied: Plaintiffs do not dispute that Mondragon, a party to the Application and the Policy was, at all relevant times, a Colombian citizen. Accordingly, the Court finds that the *Bautista* jurisdictional factors are met in this case.

obliviousness, relative or absolute annulment, termination, reformation, or any link existing in the law or in equity over the revocation of any contract *shall be exclusively assessed by the arbitration court*." [ECF No. 1-1 at 80] (emphasis added).

The Eleventh Circuit has held that language similar to that in the instant delegation provisions evinces a clear and unmistakable intent by the parties to the Application and the Policy to arbitrate the gateway issues that Plaintiffs raise in their opposition to NWL's Motion. *See, e.g.*, *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014) (affirming district court's order compelling arbitration where the agreement stated that "any and all disputes arising out of or in connection with th[e] Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration . . . ."); *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d at 1255 (finding that the parties demonstrated their clear and unmistakable intent to arbitrate "any issue regarding whether a particular dispute or controversy is . . . subject to arbitration . . . .").

Moreover, nowhere in their opposition to either NWL's Motion or UIB's Motion did Plaintiffs even mention the delegation provisions in the Application and the Policy let alone directly attack them. Defendants point out this deficiency in their reply to Plaintiffs' opposition to the Motions, and, notably, Plaintiffs did not seek leave to file a sur-reply to address the issue. Accordingly, the Court must treat the delegation provisions in the Application and the Policy as valid under the FAA, 9 U.S.C. § 2, "and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the agreement[s] as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72; *see, e.g.*, *Parnell*, 804 F.3d at 1148–49 (treating a delegation provision that committed "any issue concerning the validity, enforceability, or scope of th[e] loan or the Arbitration agreement" to

9

arbitration as valid because the appellee did not directly challenge that provision). Therefore, the Court must grant NWL's Motion and compel the parties to arbitrate this matter.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant National Western Life Insurance Company's Motion to Compel Arbitration and Stay the Proceedings, [ECF No. 6], is **GRANTED**;

2. Defendant Universal Insurance Broker, Corp.'s Motion to Stay this Action Pending Arbitration, [ECF No. 7], is **GRANTED**;

3. The parties shall arbitrate this matter in accordance with the Application and the Policy; and

4. The case shall be **STAYED** pending arbitration and **CLOSED** for administrative purposes. The parties shall file a joint status report with the Court within fourteen (14) days of the conclusion of the arbitration proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of August, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE